**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Applicant,**

v.

**Florence R. BURKE, Respondent.**

**No. C–89–3713–CAL.**

United States District Court, N.D. California.

Jan. 17, 1990.

---

Darryl P. Rains, Morrison & Foerster, San Francisco, Cal., for applicant.

Richard D. Harmon, San Francisco, Cal., for respondent.

## ORDER CONFIRMING ARBITRATION AWARD

LEGGE, District Judge.

Applicant Merrill Lynch, Pierce, Fenner & Smith, Inc. has filed a motion to vacate, alter or modify an arbitration award of the Pacific Coast Stock Exchange. Respondent Florence R. Burke opposes that motion, and moves for confirmation of the award and for sanctions. The motions raise some difficult questions about the role of a federal court in reviewing decisions of an industry arbitration panel. The motions were briefed, argued and submitted for decision. The court has considered the moving and opposing papers, the record of the case, the arguments of counsel, and the applicable authorities.

### I.

For a few months in 1987, Burke had an account with Merrill Lynch. The employee of Merrill Lynch who was Burke's financial consultant or registered representative was Ms. Litwok. After a few months of trading activity, Ms. Litwok transferred her employment to another broker, and Burke moved her account to that broker. The dispute here concerns activity in Burke's account while she was a customer of Litwok and Merrill Lynch. Burke alleged churning of her account by Litwok, and that Litwok placed her in unsuitable investments.

### II.

As a substitute for civil litigation, the investment industry has provided for arbitration of such disputes. An arbitration clause is contained in most agreements between brokers and their customers. Such agreements generally foreclose either party from pursuing civil litigation, and limit them to the remedy of arbitration.

When the dispute arose in this case, the arbitration clause resulted in arbitration before a three person panel of the Pacific Coast Stock Exchange. The matter was heard over approximately four days, and on July 15, 1989 the arbitration panel entered a decision in favor of Burke and against Merrill Lynch. The panel awarded Burke over $57,000 in compensatory damages, plus interest. The panel also awarded Burke $250,000 in punitive damages. These are the awards that are in issue in these motions.

This court's power to review an arbitration decision is generally limited to the provisions of the "Arbitration" sections of the United States Code, 9 U.S.C.A. § 9 *et seq.* (West 1970 & Supp.1989).

### III.

■ Merrill Lynch challenges the amount of the award of compensatory damages. Merrill Lynch contends that the arbitrators did not admit evidence of the settlement between Burke and the subsequent broker, and that the settlement should have reduced the amount of compensatory damages to which Burke was entitled against Merrill Lynch. Merrill Lynch also argues that the net realized loss in Burke's account with Merrill Lynch was much smaller than the panel awarded. Merrill Lynch invokes the power of this court to correct an arbitration award if "there was evident material miscalculation of figures." 9 U.S.C.A. § 11(a) (West 1970 & Supp. 1989).

According to the briefs, but without any record before this court of the arbitration proceedings, it appears there was a dispute between the parties on how to calculate Burke's damages. The measure of damages in a churning case is at least reimbursement of the commissions which the broker earned, the interest paid on the account, and the actual trading losses. Some courts have also authorized the award of lost opportunity damages. *See Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767 (9th Cir.1984); *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir.1986); *Mihara v. Dean Witter & Co.*, 619 F.2d 814 (9th Cir.1980). In view of the several permissible theories of damages which might be awarded by arbitrators in this circuit, and in view of the obviously conflicting evidence and arguments before the arbitration panel, this court cannot say that there was an "evident material miscalculation of figures."

### IV.

■ Merrill Lynch also attacks the award of punitive damages. On this subject, the arbitration panel simply stated:

"Claimant is further awarded $250,000 in punitive damages." There was no explanation of the standard which the arbitration panel used, and no findings or discussion of evidence to support that award.

In order to recover punitive damages, Burke had to establish that defendant's conduct was one involving oppression, fraud, or malice. Cal.Civ.Code § 3294(a) (Deering Supp.1989). And California has limited the recovery of punitive damages against an employer based upon the acts of its employee. An employer is not vicariously liable for punitive damages unless:

the employer had advance knowledge of the unfitness of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal.Civ.Code § 3294(b) (Deering Supp. 1989). The California Legislature has further limited the recovery of punitive damages by imposing a requirement of proof that the evidence be clear and convincing. Cal.Civ.Code § 3294(a) (Deering Supp. 1989).

As stated, the decision of the arbitrators here made no findings, stated no evidence, and made no reference to any legal standard. A verbal recording was apparently made of the arbitration proceedings, but the only portions of the recording which have been submitted to this court are the opening and closing statements of Burke's counsel. There is no other record before this court as to what else transpired during the arbitration. The court is left only with the arguments of the attorneys and their recollections of what occurred.

The question is whether this court can remand the arbitration award to the arbitrators for them to document their decision on punitive damages, so that this court is

able to better determine whether the arbitrators applied the correct legal standard. The alternative is for this court to confirm or vacate the arbitrators' award, if the award meets the minimal standards of 9 U.S.C.A. § 10 (West 1970 Supp.1989). This court concludes that the latter is the only legally proper alternative.

The scope of this court's power is defined and limited by Title 9 of the United States Code. Title 9 does not authorize this court to remand a decision to the arbitrators just for them to augment their record or state the reasons for their decision. All this court could do is vacate the award.

Title 9 U.S.C. § 10 provides for vacation of an award only on very limited circumstances, defined in subparagraphs (a) through (d). The only one applicable here would be (d): "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ This is a very limited power of review. And its limited nature has been emphasized by the courts which have had occasion to interpret it. An arbitrator's award may be made without explanation of the reasons and without a complete record of the proceedings. In such cases, the interpretation and application of statutory requirements cannot be examined. The U.S. Supreme Court has said that the "interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). The absence of express reasoning by the arbitrators does not support a conclusion that they disregarded the law. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 750 (8th Cir.) *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986); *O.R. Securities, Inc. v. Professional Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988). As this circuit has stated:

> We review the Panel's award mindful that confirmation is required even in the face of erroneous findings of fact or misinterpretations on law.... [An] arbitrator's factual determinations and legal conclusions should receive deferential review.... The rule is, though the arbitrators' view of the law might be open to serious question, ... [an award] which is within the terms of the submission, will not be set aside by a court for error either in law or fact.... It is not even enough that the Panel may have failed to understand or apply the law.... An arbitrator's decision must be upheld unless it is completely irrational or it constitutes a manifest disregard of the law.

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986).

This court cannot say from the record before it, or from the lack of a record before it, that the arbitrators exceeded their powers or totally disregarded the applicable law for an award of punitive damages. It is obvious that the arbitrators found that Burke's account had been churned. And it is apparent from the limited record that the parties presented evidence of the procedures and methods by which Merrill Lynch supervises its representatives and the accounts which they handle. Even apart from the vicarious liability which Merrill Lynch might have for the acts of Litwok under California law, a broker also owes an independent and separate duty to its customers to prevent improper activity *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 69 Cal.Rptr. 222, 236 (1968). With the existence of that separate duty, and with the evidence of churning, the arbitrators might reasonably have concluded that the standard for an award of punitive damages had been met. While arguments against an award of punitive damages certainly could have been, and undoubtedly were, made the arbitrators had at least *prima facie* evidence to support their award of punitive damages.

This court must therefore conclude that applicant Merrill Lynch has not demonstrated the limited grounds for vacating the arbitrators' decision specified in §§ 10 and 11 of Title 9.

## V.

Burke has requested sanctions under Rule 11 of the Federal Rules of Civil Procedure for Merrill Lynch's having brought this action.

The motion for sanctions is denied. This is a difficult, and perhaps developing, area of the law. Although this court disagrees with Merrill Lynch's position, it cannot say that the bringing of this action falls to the level contemplated by Rule 11.

Indeed, some thought about the future of this type of arbitration appears to be necessary. If industry arbitration, such as this within the investment industry, is to become a substitute for civil litigation, and if the federal courts are to exercise only the powers given to them by Title 9, then the arbitrators and counsel must be aware of the necessity for giving a federal court some record for review that is more than just a statement of the amount of the award. This court does not suggest that arbitrators be obliged to make findings of fact and conclusions of law equivalent to those required of a trial court. But the mere granting of a monetary award, without more, combined with the limited power of a federal court to review it, creates both uncertainty and secrecy which is undesirable as an alternative despite resolution.

## VI.

IT IS THEREFORE ORDERED that

(1) The arbitration award set forth in the decision *In the matter of Arbitration between Florence Burke and Merrill Lynch, Pierce, Fenner & Smith, Inc.*, ARF-11307-1, dated July 15, 1989, and issued by the arbitrators pursuant to Rule XII of the Rules of the Board of Governors of Pacific Stock Exchange, Inc. is confirmed in its entirety.

(2) Applicant's motion for an order vacating, or alternatively, modifying or correcting the arbitration award is denied;

(3) Respondent shall recover her costs of suit.