2005 SD 80

**Greg VOLD d/b/a States Border Turf, Plaintiff and Appellant,**

v.

**BROIN & ASSOCIATES, INC., a South Dakota Corporation, Defendant and Appellee.**

**No. 23464.**

Supreme Court of South Dakota.

Considered on Briefs April 25, 2005.

Decided June 22, 2005.

Rehearing Denied July 21, 2005.

Ronald G. Schmidt of Schmidt, Schroyer, Moreno & Lee, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Tim R. Shattuck, Daniel J. Harmelink of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we review a circuit court's decision to vacate an arbitration award. Because the arbitrator failed to follow his own order to issue a "reasoned award," we affirm.

## Background

[¶ 2.] Broin & Associates is a South Dakota corporation engaged in the business of designing and constructing ethanol production facilities. On November 2, 2000, Broin contracted to design and build a production plant known as Northern Lights Ethanol, L.L.C. Broin served as the general contractor for the project.

[¶ 3.] In April 2001, Broin signed a contract with Gregory Vold, a Minnesota resident, who would perform the site and grading work. From the beginning, there were difficulties. By December 2002, Vold had not completed much of the required work. As a result, on December 19, 2002, Broin terminated Vold's contract for cause.

[¶ 4.] In November 2003, Vold filed a demand for arbitration, seeking payment for unapproved change orders, alleged work stoppages, and other claims. Under their contract, "[a]ll claims, disputes, and other matters in question between Design/Builder and Contractor arising out of or relating to the Construction Agreement Documents or the breach thereof . . . will be decided by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association [AAA]." Broin filed an answering statement with the AAA, denying liability on Vold's claims and seeking reimbursement for the costs and expenses sustained in connection with the remaining grading work on the construction project. Vold had thirteen claims, totaling more than $800,000. Broin had eleven claims, totaling approximately $500,000.

[¶ 5.] Norman Fast was selected to be the arbitrator. He conducted a telephonic preliminary hearing with the parties and their attorneys on February 2, 2004. The purpose of the hearing was to provide the arbitrator with guidance on the parameters of the arbitration proceeding. During the hearing, it was agreed that each side would submit a specification of claims to the AAA outlining their respective demands. It was also agreed that the arbitration would be held in Watertown, South Dakota, starting on June 21, 2004. As the hearing progressed, Tim R. Shattuck, one of the attorneys for Broin, requested that the arbitrator issue a "reasoned award." According to another of Broin's attorneys, Daniel R. Harmelink, the attorney for Vold, Ron Schmidt, consented to the award being in the form of a "reasoned award." Attorney Ron Schmidt, however, denies that he agreed to a reasoned award. There was no verbatim record kept of the hearing.

[¶ 6.] After the preliminary hearing, the arbitrator prepared and signed a report and scheduling order indicating that the form of the award was to be a "reasoned award." This order was then submitted to the AAA by the arbitrator. On February 10, 2004, the case manager from the AAA sent a letter to all parties setting out the terms of the arbitrator's preliminary hearing report and scheduling order. The letter stated that "[t]he form of Award to be issued in the above matter will be a reasoned award" and that "[t]his order shall continue in effect unless and until

amended by subsequent order by the arbitrator."

[¶ 7.] The arbitration hearing began on June 21 and ended on June 24, 2004. Twelve witnesses testified. On July 13, 2004, the arbitrator issued his decision awarding $267,298 in damages to Vold and denying Broin's counterclaims. The arbitrator's award consisted of two pages. It itemized the various dollar amounts allowed for each of Vold's claims, but gave no reason for each award and no reason for rejecting Broin's claims. The award did not mention any of the relevant contract provisions at issue, cite any law, or discuss any of the evidence admitted during the four day hearing.

[¶ 8.] Following the arbitrator's decision, Broin sought to vacate the award in circuit court. The court heard the matter on September 8, 2004, and thereafter issued its Findings of Fact and Conclusions of Law and Order Granting Motion to Vacate Arbitration Award and Denying Motion to Confirm Award. Several times in its "findings" the court noted, contrary to attorney Ron Schmidt's assertion in his affidavit, that both Broin and Vold had agreed to a reasoned award during the telephonic preliminary hearing with the arbitrator on February 2, 2004. It is unclear how the court reached this factual, and perhaps, credibility, determination, since it appears that it heard no testimony during the hearing. Nonetheless, the court went on to conclude that "the parties had agreed to the issuance of a reasoned award" and "the arbitrator had exceeded the authority granted him by Broin and Vold by failing to issue a reasoned award." Accordingly, the court ruled that federal law required the award to be vacated.

[¶ 9.] Vold raises the following appeal issues: First: "Whether the trial court erred by substituting its judgment for that of the arbitrator on a strictly procedural issue, especially in light of the parties' contractual Rule 54 granting the arbitrator sole authority to interpret and apply the arbitration rules insofar as they govern his powers and duties?" Second: "Whether Broin's failure to pursue [his] remedy under contractual Rule 47(1) authorizing an aggrieved party, within 20 days of the award, (while the information is still fresh in the arbitrator's mind) to request the arbitrator to modify any alleged procedural, technical error (such as lack of reasoning) in the award: (1) was a condition precedent, and barred Broin's seeking judicial relief to cure such alleged defect, or, alternatively, (2) a waiver of a known right and/or an equitable estoppel barring him from seeking judicial relief?" [1]

### Analysis and Decision

[¶ 10.] In examining a circuit court's order vacating an arbitration award, we review the court's findings of fact under the clearly erroneous standard, but decide questions of law de novo. *Boise Cascade Corp. v. Paper Allied–Indus.,*

---

1. We do not address this second issue because Vold did not cite any authority to support his argument that the failure to request such a modification under Rule 47(1) deprives a party of the right to seek vacation of an award given in excess of the arbitrator's power. Both sides had the right and opportunity to request that the arbitrator correct technical errors in the award, though neither side did. SDCL 15–26A–60(6) and a long line of precedent requires that a party cite authority for positions argued on appeal. *See Priebe v. Priebe,* 1996 SD 136, ¶ 14, 556 N.W.2d 78, 81; *Petersen v. Sioux Valley Hosp. Ass'n,* 486 N.W.2d 516, 520 n. 2 (S.D.1992); *Fox v. Fox,* 467 N.W.2d 762, 768 (S.D.1991); *Nielsen v. McCabe,* 442 N.W.2d 477, 480 (S.D.1989); *Kanaly v. State ex rel. Janklow,* 403 N.W.2d 33, 34 (S.D.1987); *Kostel Funeral Home, Inc. v. Duke Tufty Co.,* 393 N.W.2d 449, 452 (S.D. 1986).

*Chem. & Energy Workers (PACE),* Local 7–0159, 309 F.3d 1075, 1080 (8th Cir.2002) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–48, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995)). "However, we must accord 'an extraordinary level of deference' to the underlying award itself." *Id.* (quoting *Keebler Co. v. Milk Drivers & Dairy Employees Union,* Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996)). "Indeed, we must confirm the award even if we are convinced that the arbitrator committed serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.' " *Id.* (extracting from *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union,* Local 1B, 284 F.3d 821, 824 (8th Cir. 2002)). *See also Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 748–49 (8thCir.1986).

[¶ 11.] Arbitrators possess broad, but not unlimited, authority. *Missouri River Servs., Inc. v. Omaha Tribe of Nebraska,* 267 F.3d 848, 855 (8th Cir.2001) (following *Trailmobile Trailer, LLC v. Int'l Union of Electronic, Electrical, Salaried, Mach. & Furniture Workers, AFL–CIO,* 223 F.3d 744, 747 (8th Cir.2000)). Grounds for vacating an arbitration award are provided in the Federal Arbitration Act (FAA). 9 U.S.C. § 10 (2002). Section 10 of the FAA lists several bases for vacating an arbitration award. In addition, circuit courts may also vacate arbitration awards that are "completely irrational" or that "evidence a manifest disregard for the law." *Hoffman v. Cargill Inc.,* 236 F.3d 458, 461 (8th Cir.2001) (alteration and citation omitted).

[¶ 12.] The arbitrator, Vold contends, was vested with discretion in how he handed down the final decision and award: the "arbitrator determined that he had no duty under the AAA Construction Industry Arbitration Rules to render a 'reasoned' award." Because the "parties did not request any reasoned award, in writing, prior to the appointment of the arbitrator," Vold argues that the arbitrator's decision to declare an award without a reasoned explanation was within his right. And, even if the agreement was changed to require a "reasoned award," Vold contends that the matter was one of procedure, rather than substance, precluding the circuit court from substituting its judgment for that of the arbitrator. As such, Vold argues that the circuit court's sole basis for vacating the arbitration award was procedural in nature, therefore constituting reversible error.

[¶ 13.] In addressing Vold's arguments, we first turn to the Construction Industry Arbitration Rules provided by the AAA. Rule R–1(a) states:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its Construction Industry Arbitration Rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. *The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.*

(Emphasis added.) In accord with R–21(b), "the parties and the arbitrator," during the preliminary hearing, "should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters."

[¶ 14.] It is undisputed that no request for a reasoned award was made in writing

prior to the arbitrator's appointment. At the preliminary hearing held on February 2, 2004, a request was made for a reasoned award by Broin's counsel. Vold's attorney denies that he consented to a reasoned award. After the preliminary hearing, nonetheless, the arbitrator prepared and signed a report and scheduling order, indicating that the form of the award was to be a "reasoned award." Vold contends that the parties did not agree to amend the form of the award. He also argues that the arbitrator's notation on the preliminary hearing report and scheduling order was merely suggestive, and thus the arbitrator was under no duty to issue a "reasoned award."

[¶ 15.] The preliminary hearing order, however, was then submitted to the AAA by the arbitrator. On February 10, 2004, the AAA case manager sent a letter to all parties, which reflected the terms of the arbitrator's preliminary hearing report and scheduling order. The letter indicated that "[t]he form of Award to be issued in the above matter will be a reasoned award," and that "[t]his order shall continue in effect unless and until amended by subsequent order by the arbitrator." No amendment was ever made or requested. Accordingly, the requirement of a reasoned award was apparently consented to by the arbitrator and confirmed and memorialized ·in writing under the terms of the preliminary hearing report and scheduling order and the letter issued by the AAA.

[¶ 16.] We now turn our analysis to the Federal Arbitration Act. "The Federal Arbitration Act (FAA) preempts state law and governs all written arbitration agreements in contracts involving interstate commerce." *Dinsmore v. Piper Jaffray, Inc.,* 1999 SD 56, ¶ 10, 593 N.W.2d 41, 43; *Dakota Wesleyan Univ. v. HPG Int'l, Inc.,* 1997 SD 30, ¶ 6, 560 N.W.2d

921, 922 (citing *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 271–72, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995)); *see* 9 U.S.C. § 2 (1947). The FAA's expansive reach coincides with that of the · Commerce Clause. *Allied–Bruce Terminix,* 513 U.S. at 274, 115 S.Ct. at 840. *See, e.g., Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987). Therefore, when a dispute falls within the scope of the FAA, a contract that includes an arbitration clause is governed by federal law. *Allied–Bruce Terminix,* 513 U.S. at 281, 115 S.Ct. at 843; *see* 9 U.S.C. § 3 (1947). Here, because the contract and construction dispute involves residents from South Dakota and Minnesota, thereby implicating interstate commerce, we review the matter under controlling federal law.

[¶ 17.] Section 10 of the FAA sets forth the following four grounds for vacating an arbitration award. First, "the award was procured by corruption, fraud, or undue means...." 9 U.S.C. § 10(a)(1). Second, "there was evident partiality or corruption in the arbitrators, or either of them...." *Id.* at (a)(2). Third, "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced...." *Id.* at (a)(3). Fourth, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* at (a)(4).

[¶ 18.] The circuit court ruled that the "FAA requires a court to vacate an arbitration award in which 'the arbitrators exceeded their powers, or so· imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made.'" *See* 9 U.S.C. § 10(a)(4). The court concluded that "[w]here parties to an arbitration have agreed and directed the arbitrator to issue a reasoned award, the arbitrator is obligated to conform to the parties' directive and issue a reasoned award." Thus, the "arbitrator's failure to issue a reasoned award when directed by the parties to do so [was] an act in excess of the arbitrator's power...." The circuit court must have deduced that the parties agreed to a reasoned award because the arbitrator provided for one in his order. But attorney Ron Schmidt denied that he agreed to such an award on behalf of his client.

[¶ 19.] In the absence of any credibility determination, we must label as spurious the circuit court's finding that the parties "agreed" to a reasoned award. Nonetheless, we conclude that the arbitrator violated the rule he consented to follow. Under the American Arbitration Association's Construction Industry Arbitration Rules, arbitrators are under no obligation to set out the reasons for their awards. The general rule is inapplicable, however, when a reasoned award is agreed to between the parties before selection of an arbitrator, or, after selection, when the arbitrator consents to give a reasoned award. AAA Rule R–43. We can deduce the following from the record: (1) before an arbitrator was selected, no binding agreement was made concerning the form of the award; (2) after the arbitrator was selected, at least one of the parties requested that the award be a "reasoned award" at the preliminary hearing; (3) after the preliminary hearing, the arbitrator indicated by order that the award would be reasoned; (4) the AAA issued a letter confirming that the award would be reasoned; (5) the requirement of issuing a reasoned award was therefore consented to by the arbitra-

tor; and (6) the arbitrator failed to issue a reasoned award.

[¶ 20.] AAA Construction Industry Arbitration Rules provide:

### R–43. Form of Award

\* \* \*

(b) The arbitrator shall provide a concise, written breakdown of the award. If requested in writing by all parties prior to the appointment of the arbitrator, or if the arbitrator believes it is appropriate to do so, the arbitrator shall provide a written explanation of the award.

To emphasize the pertinent language, "[i]f requested in writing by all the parties prior to the appointment of the arbitrator, *or if the arbitrator believes it is appropriate to do so*, the arbitrator shall provide a written explanation of the award." R–43(b) (emphasis added.) The arbitrator must have determined that it was *appropriate* to give a reasoned award. This conclusion is unavoidable because his order states that the award will be "reasoned." And all we have to rely on is the arbitrator's order, there being no verbatim record of what actually was agreed upon at the preliminary hearing. Therefore, the question becomes whether the arbitrator exceeded his power by issuing an award inconsistent with his own order that he would render a reasoned award.

[¶ 21.] An arbitration award can be set aside when the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). This award exceeded the arbitrator's powers because the arbitrator violated the rules he agreed to follow. *See generally Gas Aggregation Serv., Inc. v. Howard Avista Energy, LLC,* 319

F.3d 1060, 1068–69 (8th Cir.2003) (stating that an arbitration decision evinces a manifest disregard for the law when it identifies a substantive rule and then proceeds to ignore it). Our query does not end here, however. We must next determine whether his error was substantive or procedural. As stated above, the standard of review grants broad discretion to arbitrators. "This rule of deference is founded on the recognition that (1) procedural questions are often intertwined with the merits of the dispute and (2) the reservation of procedural issues for the courts provides an opportunity for serious delay and duplication of effort." *Stroh Container Co.*, 783 F.2d at 748–49 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964)). We must give greater deference to the arbitrator's decisions on procedural matters than those dealing with substantive questions. *Id.* at 749 (following *United Steelworkers of Am., AFL–CIO–CLC v. Ideal Cement Co., Div. of Ideal Basic Indus., Inc.*, 762 F.2d 837, 841 (10th Cir.1985)). Accordingly, because the overarching policy in arbitration is to attain a quick resolution to a dispute, it is crucial to determine whether the arbitrator's error was procedural or substantive.

[¶ 22.] Procedural questions involve matters that are "tangential to the main body of the arbitrable dispute.... A mere procedural irregularity provides no basis upon which to conclude that the [arbitrator] acted beyond its authority." *Sheet Metal Workers Intl. Assn. Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985) (citations omitted). "Procedural law" is defined as: "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." BLACK's LAW DICTIONARY 1221 (7th ed 1999).

[¶ 23.] "Substantive law" "creates, defines, and regulates the rights, duties, and powers of the parties." *Id.* at 1443. Vold contends that the "arbitrator determined that he had no duty under the AAA Construction Industry Arbitration Rules to render a 'reasoned' award." Are we to conclude, then, that the arbitrator, after issuing his written order, simply had the power to change his mind without notice or explanation? Once the arbitrator ordered that the award he would issue would be reasoned, his powers were defined. The arbitrator's decision to issue a reasoned award bestowed a substantive right on Broin and, at the same time, imposed a substantive duty upon the arbitrator. True, the arbitrator could have amended his written order with a subsequent order at any time. But he never did. The day he handed down his unreasoned award, his order requiring a reasoned award still stood. The arbitrator's disregard of his own order constituted a substantive error under the FAA and the AAA rules he operated under. Thus the unreasoned decision constituted a lack of a mutual, final, and definite award. For the foregoing reasons, we affirm the circuit court's decision vacating the arbitration award.

[¶ 24.] Affirmed.

[¶ 25.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, and MILLER, Retired Justice, concur.

[¶ 26.] ZINTER, Justice, dissents.

[¶ 27.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

ZINTER, Justice (dissenting).

[¶ 28.] I agree that the parties did not verbally "agree" to a "reasoned award."

*Supra* ¶ 19.[2] There is also no dispute that there was no *written* agreement for a reasoned award. Therefore, the right to require a reasoned award was lost by Broin under the American Arbitration Association's (AAA's) Construction Industry Arbitration Rules, which were incorporated into the parties' arbitration agreement. Under those rules, the arbitrator had express authority, in fact, unfettered discretion, to ultimately determine whether it was "appropriate" to render his decision in the form of a reasoned award. Because the arbitrator had express and absolute authority to determine whether a reasoned award was appropriate, this Court mistakenly concludes that "[t]his award exceeded the arbitrator's *powers*" and was not a "final and definite" award. *Supra* ¶¶ 21–23 (emphasis added).

[¶ 29.] Our standard of review of an arbitrator's decision concerning the form of the award is, like most arbitration matters, limited. Even if this Court is convinced that the arbitrator committed serious error, as "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," arbitration awards must be confirmed. *Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 788 (8th Cir.2003) (citation omitted). *See also United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286, 299 (1987); *Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1064 (8th Cir.2003); *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir.2002).

[¶ 30.] With respect to the form of the award, "[i]t is usually held that the law requires only that an arbitrator announce his award, not that he state detailed reasons therefor." *Meharry v. Midwestern Gas Transmission Co.*, 103 Ill.App.3d 144, 58 Ill.Dec. 887, 430 N.E.2d 1138, 1140 (1981) (citation omitted). As the Iowa Supreme Court explained:

> Arbitrators need not disclose the facts or reasons behind their award unless the arbitration agreement or submission, or an applicable statute, requires them to do so. Otherwise, they are no more bound to go into particulars, or to give reasons for their award, than a jury is for its verdict. When acting within the scope of their authority, being the chosen judges of the parties and the law unto themselves, they may award according to their notions of justice and without assigning any reason.

*Reicks v. Farmers Commodities Corp.*, 474 N.W.2d 809, 811 (Iowa 1991) (citation omitted).

[¶ 31.] In this case, the scope of the arbitrator's authority to determine the form of the award was governed by the AAA Rules because the parties' agreement incorporated those rules. Rule R–43(b) expressly defined the scope of the arbitrator's authority over the form of the award. It provided:

> Form of Award
>
> . . .
>
> (b) The arbitrator shall provide a concise, written breakdown of the award. *If requested in writing by all parties* prior to the appointment of the arbitrator, or *if the arbitrator believes it is appropriate* to do so, the arbitrator shall provide a written explanation of the award.

(Emphasis added). Thus, under this unambiguous rule, the parties either had to

---

**2.** As the Court notes, absent a credibility determination by the trial court, it is impossible to determine whether the parties verbally agreed to a reasoned award at the preliminary hearing.

have agreed in writing[3] to a reasoned award *or* the decision was left to the sole discretion of the arbitrator.

[¶ 32.] In this case, there was no written agreement, and therefore, the arbitrator was within the clear scope of his authority to issue a non-reasoned award. Simply stated, absent a written agreement,[4] Rule R–43(b) gave the arbitrator absolute discretion to determine the form of the award he deemed "appropriate." Because the arbitrator possessed that authority, the arbitrator did not exceed his powers or so imperfectly execute them that a mutual, final, and definite award was not made under the vacation provisions of 9 U.S.C. § 10(a)(4).

[¶ 33.] The Court concludes otherwise, reasoning that the arbitrator exceeded his powers because he "violated the rules *he agreed* to follow" and did not enter a final and definite award. *Supra* ¶¶ 21–23 (emphasis added). The Court points out that the arbitrator entered a preliminary hearing scheduling order that indicated a reasoned award would be entered. The Court then concludes that the arbitrator had no authority, after issuing a preliminary hearing scheduling order, to change his decision and issue a non-reasoned award. The Court reasons that "[o]nce the arbitrator ordered that the award he would issue would be reasoned, his powers were defined. The arbitrator's decision to issue a reasoned award bestowed a substantive right on Broin and, at the same time, imposed a substantive duty upon the arbitrator." *Supra* ¶ 23. From this premise, the Court ultimately concludes that the arbitrator's change of decision and failure to amend the preliminary order "constituted a substantive error under the [Federal Arbitration Act] and the AAA rules he operated under." *Id.* However, the Court misinterprets Rule R–43(b) and the express language of the preliminary order. The Court fails to consider that an arbitrator, like any other comparable judicial officer, is authorized to change preliminary decisions that have not become final.

[¶ 34.] The weakness of the Court's conclusions is first demonstrated by its own description of the uncertain nature of the arbitrator's preliminary decision regarding a reasoned award. The Court can only state that "a reasoned award was *apparently* consented to by the arbitrator," *supra* ¶ 15 (emphasis added), or that "the arbitrator *must have* determined that it was *appropriate* to give a reasoned award." *See supra* ¶ 20 (emphasis added). These slender findings hardly demonstrate a binding preliminary determination, let alone a binding final decision, as to the form of the award.[5]

---

3. Broin also argues that Rule R–1 allowed the parties to modify these rules. However, Rule R–1 also required a "written agreement," which was undisputedly absent here. Therefore, there is no need to address Broin's argument under Rule R–1 (providing in relevant part that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement.... *The parties, by written agreement, may vary the procedures set forth in these rules.* After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator."). (Emphasis added.)

4. Even if the parties had verbally agreed to a reasoned award at the preliminary hearing, there is no dispute that these parties never agreed in *writing*. Therefore, Broin may not rely on Rule R–43(b) or R–1 to require a reasoned award.

5. The Court's equivocal description of the preliminary order is due to the nature of the record in arbitrations. The record reflects that this issue was discussed at the preliminary hearing. Thereafter, a confirming preliminary scheduling order indicated a reasoned award would be utilized. However, for reasons not disclosed in the record, the arbitrator subsequently changed his decision and

[¶ 35.] But, more fundamentally, the Court's reasoning (that an arbitrator may not change his decision before a final award is entered because a preliminary order bestows unalterable substantive rights and duties) is legally unsupportable. It is unsupportable because first, as both parties acknowledge, the preliminary order was expressly modifiable by the arbitrator at any time. Indeed, Paragraph 12 of the preliminary order provided it was interlocutory and subject to change at any time: "This order shall continue in effect *unless and until amended by subsequent order of the Arbitrator* (s)." (Emphasis added.) Similarly, the case manager's report, which confirmed the terms of the preliminary hearing and this arbitration, indicated that the preliminary order would "continue in effect *unless and until amended by subsequent order of the arbitrator.*" (Emphasis added.) Thus, by the terms of the preliminary order itself, the arbitrator retained express authority to change the form of the award.

[¶ 36.] Second, it must be remembered that the authority to change a preliminary or interlocutory order is well recognized in the federal and state law governing dispute resolutions. It is specifically recognized that preliminary and interlocutory orders [6] do not bestow unalterable rights and duties. That is because the federal courts have recognized there is "inherent power to reconsider and modify an inter-

locutory order any time prior to entry of judgment." *Viehweg v. Mello,* 5 FSupp2d 752, 757 (E.D.Mo.1998). A departure from an earlier holding is allowed when the Court is "convinced that the holding is incorrect." *Id. See also Lovett v. General Motors Corp.,* 975 F.2d 518, 522 (8th Cir. 1992) (stating that until the district court entered judgment on all claims, it could consider earlier rulings on an issue). Similarly, we have consistently held that "[a] trial court has the inherent power to reconsider and modify an order any time prior to entry of judgment." *Moore v. Michelin Tire Co., Inc.,* 1999 SD 152, ¶ 46, 603 N.W.2d 513, 525 (citations omitted). Therefore, it is no surprise that arbitrators also have this authority to reconsider their earlier rulings until the time they become final. *Foreman v. Cargill,* 1986 WL 9910 (Del.Super.Ct.).

[¶ 37.] Third, contrary to the majority opinion, there is no requirement under Rule R–43(b) or the FAA that an arbitrator must issue a formal "amended order" to retain *authority* to re-determine the form of the award that the arbitrator will ultimately utilize. On the contrary, there is *only one way* an arbitrator can lose his authority and become bound to a particular form of award under the rules of this arbitration; i.e. if a reasoned award is "requested in writing by all parties prior to the appointment of the arbitrator." *Id.* That did not occur.

---

decided not to issue a reasoned award. Because of the nature of the record in arbitrations, we simply do not know why the arbitrator changed his decision as to the form of the award. All we do know is that Rule R–43(b) expressly authorized the arbitrator to determine the form of the award he deemed "appropriate," and there is no provision of the Federal Arbitration Act that invalidates this authority.

6. The preliminary hearing order regarding the form of the award under Rule R–43(b)

was clearly interlocutory in nature. *See Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.,* 43 N.Y.2d 276, 401 N.Y.S.2d 186, 372 N.E.2d 21, 23 (1977) (stating that when arbitrators make what in judicial proceedings might be described as an interlocutory order, they decide which of two alternative sets of arbitration rules the particular arbitration proceeding should thereafter be conducted under—this is an intermediate procedural determination.).

[¶ 38.] Finally, even if the technicality of a formal amendment were preferable under Rule R–43(b), the arbitrator possessed other authority to issue a non-reasoned final award without amending the preliminary order. This authority was granted in Rule R–54, which gave the arbitrator authority to "interpret and apply" Rule R–43(b) insofar as it relates to the arbitrator's powers and duties. Thus, having authority to interpret and apply Rule R–43(b), it is immaterial under arbitration standards of review whether the arbitrator correctly or incorrectly exercised that authority and changed the form of the final award without amending the preliminary order. Even if the arbitrator had incorrectly interpreted Rule R–43(b) to not require a formal amendment before issuing a non-reasoned award, it was within the scope of the arbitrator's authority to interpret and apply that rule in a manner that the final award superseded any preliminary orders. *See generally Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir.1985) (construing the same AAA "power to interpret and apply the AAA rules," to "obligate . . . the parties to abide by the AAA's determination, at least within reasonable limits, of what constitutes such compliance" with other AAA rules); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Burke*, 741 F.Supp. 191, 194 (N.D.Cal.1990) (stating that "interpretations of the law by the arbitrators in contrast to manifest disregard are not subject . . . to judicial review for error in interpretation." (quoting *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168, 176 (1953)).

[¶ 39.] In the final analysis, the outcome of this case is controlled by the fact that there was no written agreement for a reasoned award. Therefore, this arbitrator had the sole authority to determine the form of the award. Moreover, his preliminary order was subject to change in the final award. Thus, after hearing the facts and law at the hearing, the arbitrator *had authority* to determine that the case only merited a non-reasoned award. I therefore dissent.