#24229-a-DG

**2007 SD 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SPISKA ENGINEERING, INC.,          Plaintiff and Appellee,

  v.

SPM THERMO-SHIELD, INC.,          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEFF W. DAVIS
Judge

\* \* \* \*

MICHAEL C. LOOS
COURTNEY R. CLAYBORNE of
Clayborne & Loos, P.C.
Rapid City, South Dakota          Attorneys for plaintiff
                                           and appellee.

JONATHAN M. OOSTRA
JAMES S. NELSON of
Gunderson, Palmer, Goodsell & Nelson
Rapid City, South Dakota          Attorneys for defendant
                                           and appellant.

\* \* \* \*

ARGUED FEBRUARY 14, 2007

OPINION FILED **03/28/07**

#24229

GILBERTSON, Chief Justice

[¶1.]      SPM Thermo-Shield, Inc. appeals a judgment of the circuit court affirming the decision of an arbitrator and denying a motion to vacate the arbitration award. We affirm.

## FACTS AND PROCEDURE

[¶2.]      On August 3, 1994, Thermo-Shield entered into an Agreement with Spiska Engineering, Inc. Under this Agreement, Spiska was designated as the exclusive distributor of Thermo-Shield products in several European countries. Subsequent addendums and supplements to the Agreement granted Spiska additional territories and the right to mix raw Thermo-Shield material instead of buying the pre-mixed product. Beginning in September 2000, Thermo-Shield attempted to amend the Agreement to include a price increase and relinquishment of Spiska's mixing rights. Spiska rejected the proposed amendments. Soon thereafter, Thermo-Shield notified Spiska that its contracts and rights with Thermo-Shield were terminated.

[¶3.]      There are several provisions of the Agreement relevant to this appeal. They include:

> 8.    This Agreement shall continue in force and govern all transactions and relations between the parties hereto until canceled or terminated. Either party may cancel or terminate this Agreement at any time upon a material breach by the other party (including but not limited to illegal activities, misrepresentation of products or warranty, etc.)[.]

> 10.    On termination of this Agreement, neither Company nor Distributor shall be liable to each other for compensation, reimbursement, or damages (1) either on account or present or prospective profits on sales or anticipated sales, (2) on account of expenditures, investments, or commitments made in connection

herewith or in connection with the establishment, development, or maintenance of the business or goodwill of Company or Distributor, or (3) on account of any other cause whatsoever. The termination shall not affect the rights or liabilities of the parties with respect to goods previously sold under this Agreement, or with respect to any indebtedness then owing by either party to the other.

30.     In the event of any dispute between the parties[,] such dispute will be arbitrated according to the AAA rules, and the prevailing party shall be entitled to recover from the other party all costs related to the action, including reasonable attorney's fees.

[¶4.]     Spiska requested arbitration per the Agreement, claiming wrongful termination by Thermo-Shield. The initial arbitrator decided in favor of Thermo-Shield, and the circuit court affirmed that decision. Spiska appealed to this Court. We remanded for the circuit court to reconsider its decision concerning whether the arbitration award was procured by undue means in light of newly discovered documents. Spiska Engineering, Inc. v. SPM Thermo-Shield, Inc., 2004 SD 44, ¶16, 678 NW2d 804, 809. On remand, the circuit court vacated the initial arbitration award and ordered a new arbitration.

[¶5.]     A second arbitration hearing was conducted with both parties present. After "review[ing] all the evidence presented, including the specific wording of the various contracts between the parties, and having had the opportunity to observe the witnesses and determine their credibility," the second arbitrator concluded that "SPM Thermo-Shield, Inc. wrongfully terminated certain contracts between it and Spiska Engineering, Inc., and Spiska is entitled to damages, costs, fees, and interest" in the amount of $4,999,257. The award included damages for past expenditures, the sale of the license agreement, illegal sales in Spiska's territories,

lost profits, attorneys' fees and costs and lost profits for projected sales. The arbitrator's decision did not include any reasoning for its interpretation of the Agreement to allow damages.[1]

[¶6.]     Thermo-Shield filed an application to the circuit court requesting an order vacating the arbitrator's award of damages, and Spiska sought confirmation of the award. The circuit court issued a memorandum decision confirming the arbitrator's award. In that decision, the court concluded that the arbitrator "was not constrained by the limitation of damages clause in paragraph ten of the contract. Martin [the arbitrator] determined Thermo-Shield's wrongful termination of the contract was not a material breach which was contemplated by the parties in paragraph eight. Therefore, the limitations on damages in paragraph ten are inapplicable." The court also found that it was clear the arbitrator "'construed or applied' the contract when developing his binding decision."

[¶7.]     The court also filed findings of fact and conclusions of law. The court concluded that "the arbitrator did not exceed his authority," for the "decision [was] justified and supported by the agreements." The court reasoned:

> In arriving at his decision the arbitrator reviewed the entire original contract including paragraphs 8 and 10 which dealt with termination of the contract and so-called limitations of damages, respectively. Paragraph 8 of the contract allows the contract to be terminated only where there is a material breach, which is defined to include '. . . illegal activities, misrepresentations of products or warranty, etc.' Certainly, the

---

1.     Under the AAA, arbitrators are under no obligation to set out the reasons for their awards unless a reasoned award is agreed to between the parties before selection of an arbitrator, or after selection when the arbitrator consents to give a reasoned award. Vold v. Broin & Associates, Inc., 2005 SD 80, ¶20, 699 NW2d 482, 488.

> finding by the arbitrator that the contract was wrongfully
> terminated was within his authority to decide all disputes
> arising out of the agreement. Because the arbitrator found the
> contract was wrongfully terminated by Thermo-Shield, he was
> not constrained by the limitation of damages found in paragraph
> 10 of the contract.

"Applying an 'extraordinary level of deference' to Arbitrator Martin's decision," the court upheld and confirmed the award.

[¶8.] Thermo-Shield appeals, raising one issue:

**Whether the circuit court erred in affirming the arbitration award.**

## STANDARD OF REVIEW

[¶9.] We have recently stated the standard of review of a court order affirming an arbitrator's award as such:

> Judicial review of arbitration awards is narrow as provided by
> SDCL 21-25A-24. In reviewing a trial court's order 'confirming
> the arbitrator's award, we accept the court's factual findings
> unless clearly erroneous, but decide questions of law de novo.'
> The party asserting error has the burden of proof.

*Spiska Engineering, Inc.*, 2004 SD 44, ¶4, 678 NW2d at 805 (quotation omitted).

## ANALYSIS AND DECISION

[¶10.] Thermo-Shield claims the arbitration award in favor of Spiska should be vacated pursuant to SDCL 21-25A-24(3), because the arbitrator exceeded his powers in awarding monetary damages. Thermo-Shield argues that the Agreement clearly and unambiguously limits damages in the event of termination by either party. Thus, it submits that the arbitrator's award of damages violated the Agreement between the parties and was an act beyond the powers of the arbitrator. Spiska claims the Agreement is amenable to the arbitrator's interpretation allowing

-4-

an award of damages in the case of a wrongful termination, thus the arbitrator did not exceed his powers in interpreting the Agreement in such a manner and subsequently awarding damages.

[¶11.]     SDCL 21-25A-24 lists grounds available for vacation of an arbitrator's award. "'Unless one of the statutory subsections to vacate or modify an award is applicable, arbitration awards are presumptively correct.'" Azcon Const. Co., Inc. v. Golden Hills Resort, Inc., 498 NW2d 630, 635 (SD 1993) (quoting Western Cas. & Sur. Co. v. Gridley, 362 NW2d 100, 102 (SD 1985)). The subsection relevant to this appeal provides: "Upon application of a party, the court shall vacate an award where: . . . (3) The arbitrators exceeded their powers." SDCL 21-25A-24(3).

[¶12.]     "Whether an arbitrator acted within the scope of his authority, or, conversely, exceeded his powers, is a question of law, reviewed de novo, the resolution of which depends on the intention of the parties. The intention of the parties is determined by reference to the agreement or submission." Double Diamond Const. v. Farmers Co-op. Elevator Ass'n of Beresford, 2004 SD 65, ¶10, 680 NW2d 658, 660 (citations omitted). "In deciding whether an arbitrator has exceeded his power, the court need only examine the submission and the award to determine whether the award conforms to the submission." Id. at 660-61 (citation omitted). Further, "the arbitrators' powers are derived from the arbitration agreement; therefore, the arbitration award must conform to, and comply with, the arbitration agreement." Aamot v. Eneboe, 352 NW2d 647, 649 (SD 1984) (citations omitted).

[¶13.] Moreover, "'we must confirm the award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Vold*, 2005 SD 80, ¶10, 699 NW2d at 486 (quotation omitted). And, once again, "'when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made.'" *Azcon Const. Co., Inc.*, 498 NW2d at 635 (quotation omitted).

[¶14.] This Court has held an arbitrator exceeded his powers on three occasions. *Aamot*, 352 NW2d at 649-50; *Double Diamond Const.*, 2004 SD 65, ¶12, 680 NW2d at 661; *Vold*, 2005 SD 80, ¶21, 699 NW2d at 488. In *Aamot*, we held the equitable division provided by the arbitrators was not within the scope of the agreed-upon issues for arbitration, therefore the arbitrators exceeded their powers. 352 NW2d at 649-50. Likewise, in *Double Diamond Const.*, we concluded that the arbitrator failed to decide the issue submitted, thus exceeding his authority under SDCL 21-25A-24(3). 2004 SD 65, ¶12, 680 NW2d at 661. Applying the Federal Arbitration Act (FAA)[2] in *Vold*, we held the arbitrator exceeded his power by issuing an unreasoned award after he agreed to order a reasoned award. 2005 SD 80, ¶21, 699 NW2d at 488.

---

2. An arbitration award may be set aside under the FAA when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 USC § 10(a)(4) (2002).

[¶15.] These cases are only partially instructive; however, for there is no dispute in this case that the arbitrator had the authority to interpret the contract and exercised that authority accordingly. Instead, Thermo-Shield claims the arbitrator exceeded his powers by failing to apply the plain meaning or terms of the contract.

[¶16.] Federal courts have more specifically addressed this issue. For instance, the Eighth Circuit Court of Appeals (Eighth Circuit) has held that if an arbitrator disregards the plain language of the agreement, he acts without authority, and the award must be vacated. Northwest Airlines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Air Transport Dist. Lodge No. 143, 894 F2d 998, 1000 (8thCir 1990). "'Although the arbitrator may interpret ambiguous language, the arbitrator may not disregard or modify unambiguous contract provisions.'" Id. (quotation omitted). The United States Supreme Court has also stated, "[t]he arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 US 29, 38, 108 SCt 364, 371, 98 LEd2d 286 (1987) (citation omitted).

[¶17.] The Eighth Circuit has also stated that "[a] court 'cannot interfere with the arbitrator's award unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation.'" United Food and Commercial Workers, AFL-CIO, CLC, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc., 113 F3d 893, 895 (8thCir 1997) (quotations omitted). Also, a court "may

not vacate the award simply because [it] disagree[s] with [the arbitrator's] interpretation, unless that interpretation so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it." Boise Cascade Corp. v. Paper Allied-Indus., Chem. and Energy Workers (PACE), Local 7-0159, 309 F3d 1075, 1081 (8thCir 2002). Furthermore, "[t]he plain text must be stretched to reach the arbitrator's interpretation, but not beyond its breaking point." *Id*. n5.

[¶18.] In this case, Thermo-Shield does not challenge the arbitrator's power to interpret the terms of the Agreement between the parties, nor does it argue that the arbitrator simply misinterpreted the terms of the Agreement. Thermo-Shield concedes that if the disputed contractual provisions (paragraphs eight and ten) are susceptible to the arbitrator's and circuit court's interpretation, the award is not subject to judicial review and must be affirmed. Therefore, the issue before this Court is reduced to whether the Agreement's terms are susceptible to the arbitrator's interpretation. If so, we must affirm the award. On the other hand, if the Agreement's plain terms are susceptible to only one interpretation—that only limited damages are allowed upon termination, wrongful or otherwise—then the arbitrator exceeded his powers by awarding damages, and we must reverse.

[¶19.] "Whether the language of a contract is ambiguous is a question of law." Bunkers v. Jacobson, 2002 SD 135, ¶15, 653 NW2d 732, 738 (citation omitted). We have determined that "'[a] contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct.'" Pesicka v. Pesicka, 2000 SD 137, ¶8, 618 NW2d 725, 727 (quotation omitted). Further, "'a contract is ambiguous only when it is capable of more than

one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" Divich v. Divich, 2002 SD 24, ¶10, 640 NW2d 758, 761 (quotation omitted).

[¶20.]     In paragraph ten, the Agreement provides for a limitation of damages "[o]n termination of this Agreement." There are no qualifying or limiting words, such as wrongful, for cause, lawful, permitted by this Agreement, such, etc. modifying the word termination. Therefore, this paragraph, standing alone, unambiguously provides for a limitation of damages upon any termination, wrongful or otherwise.

[¶21.]     However, "[c]onventional principles of contract interpretation require agreements to be construed in their entirety giving contextual meaning to each term." *Bunkers*, 2002 SD 135, ¶15, 653 NW2d at 738. Also, "[w]hen provisions conflict, . . . 'the more specific clauses are deemed to reflect the parties' intentions— a specific provision controls a general one.'" *Id*. (quotation omitted).

[¶22.]     In order to give contextual meaning to the word "termination," we must review the paragraph preceding the limitations of damages paragraph that also uses the word "termination." In paragraph eight, the Agreement provides that it governs until terminated. Then, in the same paragraph, it sets forth when a termination is allowed by the parties. It provides, "[e]ither party may cancel or terminate this Agreement at any time upon a material breach by the other party."

[¶23.]     According to the circuit court, the arbitrator assumed "termination," as used in paragraph ten, referred to the termination allowed for in the preceding paragraph eight. Thus, the arbitrator concluded that only a termination upon a

material breach by the other party would cause this limitation of damages paragraph to apply. Because Thermo-Shield wrongfully terminated the Agreement in this instance, the arbitrator concluded that the limitation of damages paragraph did not apply.

[¶24.]     Thermo-Shield argues that this interpretation renders paragraph ten meaningless. And, "[a]n interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable or of no effect." Nelson v. Schellpfeffer, 2003 SD 7, ¶14, 656 NW2d 740, 744 (citation omitted). Thermo-Shield points out that the circuit court's interpretation allows the damage limitation provision to apply only if the contractual relationship is terminated according to the terms of the Agreement as provided by paragraph eight. However, Thermo-Shield argues that when the Agreement is terminated according to its terms (under paragraph eight), there would be no damages to limit, for there would be no breach.

[¶25.]     A Pennsylvania court interpreting a distributorship agreement and facing a similar argument that a limitation of damages clause did not apply in the case of a wrongful termination stated:

> I reject plaintiff's first argument that the clause does not apply in the case of a breach of the agreement because that would render it meaningless. The plain language of the clause states in the event the parties' relationship ceases neither side will be entitled to lost profits. The plaintiff argues that the clause was intended only to make lost profits unavailable when the contract is terminated according to its terms. What the plaintiff's interpretation overlooks is that if the contract were terminated according to its terms, there would be no breach of contract. If there is no breach, there is no right to recover and if there is no right to recover, there is no exposure to limit. Plaintiff's interpretation reads the clause as simply stating the obvious,

> that is, if there is no breach, then there is no recovery. This defies common sense as well as the rules of contract interpretation. *See* 4 S. Williston, Contracts § 601, at 310 (3d ed. W. Jaeger 1961) (contracts should be construed so that no terms are rendered meaningless).

Stanley A. Klopp, Inc. v. John Deere Co., 510 FSupp 807, 812 (EDPa 1981).

However, the contract in *Klopp* stated, "if such appointment is canceled *for any reason*, neither party shall be entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by the termination of the relationship." *Id*. at 808 (emphasis added).

[¶26.] Even though we may believe the arbitrator's and circuit court's interpretation is a misinterpretation of the Agreement, we cannot say with positive assurance that the Agreement is not susceptible of the arbitrator's interpretation. Reading paragraph ten in context with paragraph eight, we cannot say the word "termination" is unambiguous, subject only to an interpretation that the limitations provision applies to *any* termination, including a wrongful termination.

[¶27.] Furthermore, the arbitrator's and circuit court's interpretation that the termination referenced in paragraph ten referred to the termination allowed in paragraph eight is not an interpretation that so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it. After all, according to principles of contract interpretation, words are to be given their contextual meaning, and a specific clause or provision controls over a more general one. *Bunkers*, 2002 SD 135, ¶15, 653 NW2d at 738. In paragraph eight, termination is described in more detail than in paragraph ten. It specifically allows for termination by one party upon a material breach by the other party. Given the

existence of this specific provision concerning termination, paragraph ten is not incapable of the arbitrator's and circuit court's interpretation that termination, standing alone, meant termination based upon a material breach of the other party described in the preceding paragraph.

[¶28.]    Also, the arbitrator's and circuit court's interpretation that the Agreement prohibits damages only when it is terminated upon a material breach does not fail to give meaning to every provision in the Agreement.  Thermo-Shield claims that there would be no damages to limit if the termination referred to in paragraph ten encompassed only the termination discussed in paragraph eight. However, damages could still exist in the event of termination provided for in paragraph eight.  Paragraph eight allows a party to terminate the Agreement when the other party has materially breached the Agreement.  In such a case, the party terminating the agreement would also have a legal right to obtain damages from the breaching party.  However, according to the arbitrator's and circuit court's interpretation, paragraph ten would limit damages in that instance.  Thus, paragraph ten would not be rendered meaningless by the arbitrator's interpretation.  Furthermore, the *Klopp* court's reasoning supporting this argument is distinguishable, for that contract provided for termination *for any reason.*  This contract did not contain such language.

[¶29.]    Moreover, as this Court noted in *Western Cas. & Sur. Co.,* "one of the objects of arbitration is the finality of decisions."  362 NW2d at 102.  "The purpose of arbitration is to settle controversy and avoid litigation."  *Id.* (citation omitted). "Because the parties have contracted to have disputes settled by an arbitrator

chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO*, 484 US at 37-38, 108 SCt at 370, 98 LEd2d 286.

[¶30.]      Therefore, the merits of an arbitration decision are insulated from final review by a court.  Otherwise, the purpose of arbitration is "defeated if the losing party after arbitration had ready access to the court as though no arbitration existed." *Western Cas. & Sur. Co.*, 362 NW2d at 102 (citations omitted).  Also, "[c]ourts [] do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union, AFL-CIO*, 484 US at 38, 108 SCt at 370, 98 LEd2d 286.

[¶31.]      Under our limited review of an arbitrator's decision, Thermo-Shield had the burden of establishing that the Agreement was plain, unambiguous and not susceptible to the arbitrator's and circuit court's interpretation.  This standard effectively requires Thermo-Shield to establish that the arbitrator's and circuit court's interpretation was irrational.  This burden was not met.  For the foregoing reasons, we affirm the judgment of the circuit court and order that the arbitrator's award be enforced.

[¶32.]      Affirmed.

[¶33.]      KONENKAMP, ZINTER, and MEIERHENRY, Justices, and WILBUR, Circuit Judge, concur.

[¶34.]      WILBUR, Circuit Judge, sitting for SABERS, Justice, disqualified.