#26065-a-DG

**2012 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DT-TRAK CONSULTING, INC.,
a South Dakota Corporation,                    Plaintiff and Appellant,

v.

DAN PRUE, an individual,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge

\* \* \* \*

ROGER W. DAMGAARD
SANDER J. MOREHEAD of
Woods, Fuller, Shultz and Smith, P.C.
Sioux Falls, South Dakota                    Attorneys for plaintiff
and appellant.


VANYA S. HOGEN of
Jacobson, Buffalo, Magnuson,
 Anderson & Hogen, P.C.
St. Paul, Minnesota                    Attorneys for defendant
and appellee.

\* \* \* \*

ARGUED MARCH 20, 2012

OPINION FILED **05/23/12**

#26065

GILBERTSON, Chief Justice

[¶1.]        Dan Prue sold his majority interest in DT-Trak Consulting, Inc. (DT-Trak), a medical coding business, for a lump-sum payment and several annual payments.  DT-Trak withheld an annual payment, asserting that Prue had violated the Stock Purchase Agreement.  The matter proceeded to arbitration.  A three-member arbitration panel made an award in Prue's favor.  DT-Trak sought to vacate the award, alleging that the arbitrator it selected demonstrated evident partiality, and that the panel's findings of fact and conclusions of law were insufficient.  The circuit court affirmed.  DT-Trak appeals.  We affirm.

## FACTS & PROCEDURAL HISTORY

[¶2.]        DT-Trak is a South Dakota corporation that offers services to medical providers using electronic medical records.  Most of DT-Trak's clients are Indian Health Services facilities and providers.  Prue became a 51% owner of DT-Trak in 2003, in addition to serving as President and Chief Executive Officer.  His primary responsibility was developing and maintaining relationships with clients.

[¶3.]        In 2007, Prue was removed from daily operations of DT-Trak due to personality and other conflicts.  Prue entered into a Stock Purchase Agreement ("Agreement") with DT-Trak, terminating his relationship with the company.  The Agreement provided for DT-Trak's purchase of Prue's interest for $310,000 plus annual performance payments totaling $500,000 beginning in January 2009 to January 2012.  The Agreement also contained provisions limiting competition, solicitation, and disclosure.  Specifically, Prue agreed that for three years he would not: (1) compete with DT-Trak; (2) directly or indirectly solicit or attempt to induce

current and certain former employees of DT-Trak to leave the company; (3) solicit or induce any current or prospective DT-Trak customers to cease doing business with DT-Trak; or (4) knowingly attempt to interfere with any business relationship between DT-Trak and any third party. If Prue violated any of these provisions, DT-Trak was entitled to cease making any further annual payments and to a full refund of the funds it had already paid to Prue. The Agreement contained an arbitration provision.

[¶4.] Kathy Price and Tara Hochhalter worked for DT-Trak. Both women worked on DT-Trak's account with Maniilaq Health Center in Alaska, a key account for the company. Hochhalter worked there from 2005 to March 2007. Price started with DT-Trak in August 2002 and resigned in June 2007. She allegedly took confidential information related to the Maniilaq account with her. Before leaving, Price and Hochhalter signed non-compete and non-disclosure agreements with DT-Trak, but the restrictions ended in or around November 2008. Their agreements did not contain arbitration clauses.

[¶5.] In 2009, Price and Hochhalter formed P&H Med Services, which competes with DT-Trak. P&H entered into a contract with Maniilaq in March 2009, even though Maniilaq was still DT-Trak's client. Maniilaq terminated its contract with DT-Trak in June 2009. That same month, DT-Trak sued Price, Hochhalter, P&H, and other former employees under a variety of theories, including breach of non-compete agreements and misappropriation of trade secrets and confidential information. DT-Trak claims it would have named Prue as a co-defendant in the litigation but his Agreement contained an arbitration provision. Believing Prue was

involved with the formation of P&H, DT-Trak withheld Prue's January 2010 payment, asserting that he had violated the Agreement by assisting Price and Hochhalter.

[¶6.]     Prue initiated an arbitration proceeding.  He sought his 2010 payment, plus damages for breach of the covenant of good faith and fair dealing, prejudgment interest, lost investment income, and procedural safeguards for future payments. DT-Trak counterclaimed that under the Agreement, it was entitled to withhold the payment.

[¶7.]     The arbitration provision of the Agreement required arbitration by a three-person panel of licensed attorneys with commercial law experience.  No arbitrator could be related to or have represented either party at any time.  Each party was entitled to choose an arbitrator and the two arbitrators would then select a third arbitrator.  Written notice of each party's selected arbitrator was mandated. The Agreement also required the panel to enter findings of fact and conclusions of law.  Prue selected Robert Hayes.  DT-Trak selected Don Peterson from Morgan & Theeler, LLP.  Hayes and Peterson chose Jon Sogn as the third arbitrator.

[¶8.]     After arbitration had commenced and the hearing was scheduled, Peterson informed DT-Trak's attorneys that he previously had contact with a person listed as a witness.  Peterson withdrew as an arbitrator, but indicated Jack Theeler, also from his firm, could serve because the conflict was personal, not legal. The nature of the conflict was confirmed by Sogn.  DT-Trak agreed to allow Theeler to replace Peterson.

[¶9.]    The arbitration panel issued findings of fact and conclusions of law after a two-day hearing.  The arbitration panel unanimously held that DT-Trak failed to prove Prue violated the non-compete provisions.  Prue was awarded payments under the Agreement.  After the hearing, DT-Trak's attorneys examined phone records and noticed that Price had placed a call to Morgan & Theeler the day she was served with DT-Trak's complaint in the state court litigation.  DT-Trak served discovery on Price in that litigation asking her to identify and describe the conversations she had with the Morgan & Theeler firm.  Price asserted attorney-client privilege.

[¶10.]    DT-Trak filed a motion to vacate the arbitration award with the circuit court.  DT-Trak claimed that its chosen arbitrator (Theeler) was evidently partial and that the arbitration panel exceeded its authority by failing to submit sufficient findings of fact on key issues in dispute.  In response to this motion, Prue's attorney contacted Price's attorney.  Price provided a supplemental discovery response, indicating that Price had spoken with Tim Bottum of Morgan & Theeler when she called about possible representation.  They spoke briefly and Price ultimately hired a different law firm to represent her.

[¶11.]    The circuit court denied DT-Trak's motion to vacate the arbitration award, determining there was no evident partiality by the arbitrators and that the panel had not exceeded its authority.  We address the following issues on appeal:

1. Whether a choice-of-law provision in the Agreement preempts the Federal Arbitration Act.

2. Whether the circuit court erred in determining there was not evident partiality in the arbitration panel.

3. Whether the circuit court erred in concluding that the arbitration panel provided findings of fact and conclusions of law sufficient to support its decision.

## STANDARD OF REVIEW

[¶12.] The standard of review of a court order affirming an arbitrator's award is as follows:

> Judicial review of arbitration awards is narrow as provided by SDCL 21-25A-24. In reviewing a trial court's order 'confirming the arbitrator's award, we accept the court's factual findings unless clearly erroneous, but decide questions of law de novo.' The party asserting error has the burden of proof.

*Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc.*, 2007 S.D. 31, ¶ 9, 730 N.W.2d 638, 643 (quoting *Spiska Engineering, Inc. v. SPM Thermo-Shield, Inc.,* 2004 S.D. 44, ¶ 4, 678 N.W.2d 804, 805; *see also Wright v. GGNSC Holdings LLC*, 2011 S.D. 95, ¶ 8, 808 N.W.2d 114, 117 ("We review de novo the circuit court's interpretation of an arbitration agreement.").

## ANALYSIS

[¶13.] **1. Whether a choice-of-law provision in the Agreement preempts the Federal Arbitration Act.**

[¶14.] Section 13.9 of the Agreement is entitled "Governing Law" and provides:

> This Agreement, including its validity, interpretation and enforcement, and the rights and obligations of the parties hereunder, or arising directly or indirectly from this transaction or the parties' relationships because of the Business, shall be governed by the laws of the State of South Dakota (without giving effect to the conflicts of laws provisions thereof).

To the circuit court, DT-Trak argued that the Federal Arbitration Act (FAA), codified at 9 U.S.C. §§ 1-16, preempts the South Dakota Arbitration Act (SDAA), SDCL chapter 21-25A. Prue asserted that the choice-of-law provision in the Agreement controls to the extent that the SDAA does not conflict with the FAA. The circuit court concluded that South Dakota law controlled because of the choice-of-law provision in Section 13.9 of the Agreement. However, the circuit court "assume[d], *arguendo*, that DT-Trak's interpretation of the law is correct and [performed] its analysis under the application of the FAA."

[¶15.]     On appeal, DT-Trak asserts that the FAA controls because the FAA governs agreements to arbitrate disputes that relate to transactions involving interstate commerce. 9 U.S.C. § 2. "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S. Ct. 2037, 2040, 156 L. Ed. 2d 46 (2003) (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 1006, 92 L. Ed. 1328 (1948)). DT-Trak and Prue are both South Dakota parties. But DT-Trak has clients in several states, including local divisions of a federal agency. DT-Trak asserts that because the Agreement with Prue affects interstate commerce, the FAA applies.

[¶16.]     DT-Trak contends that a "general choice-of-law provision does not preempt the FAA." In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54-55, 115 S. Ct. 1212, 1215, 131 L. Ed. 2d 76 (1995), the parties' agreement

included an arbitration provision and a choice-of-law provision that New York state law would apply. New York law did not allow for the award of punitive damages during arbitration. The Supreme Court harmonized the two provisions by reading the choice-of-law provision to encompass the substantive principles that New York courts would apply, but not special rules limiting the authority of arbitrators. *Id.* at 63-64, 115 S. Ct. at 1219. Accordingly, the Court held that punitive damages were allowed although New York law substantively applied. *Id.*

[¶17.] Prue responds that the SDAA is controlling. First, it was the law selected by the parties in the Agreement. Also, the FAA does not contain an express preemption provision, indicating Congress did not intend to occupy the field of arbitration guidelines. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989).[1] Finally, SDAA does not conflict with the FAA's primary purpose of "ensuring that private agreements to arbitrate are enforced according to their terms." *Id.* at 478, 109 S. Ct. at 1255. Prue relies on *Volt Information Sciences*, in which the Supreme Court upheld a choice-of-law provision because enforcing the agreement under state law did not conflict with the purpose of the FAA. *Id.* at 479, 109 S. Ct. at 1256.

---

1. The United States Supreme Court has held that preemption can arise under three circumstances: (1) where the federal statute so expressly provides; (2) where "state law is naturally preempted to the extent of any conflict with a federal statute" and (3) "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. ___, 132 S. Ct. 1261, 1265-66, ___ L. Ed. 2d ___ (2012) (citations omitted).

[¶18.]       This Court has previously declared:

> "The Federal Arbitration Act (FAA) preempts state law and governs all written arbitration agreements in contracts involving interstate commerce." *Dinsmore v. Piper Jaffray, Inc.,* 1999 S.D. 56, ¶ 10, 593 N.W.2d 41, 43; *Dakota Wesleyan Univ. v. HPG Int'l, Inc.,* 1997 S.D. 30, ¶ 6, 560 N.W.2d 921, 922 (citing *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 271-72, 115 S. Ct. 834, 838, 130 L. Ed. 2d 753 (1995)); *see* 9 U.S.C. § 2 (1947). The FAA's expansive reach coincides with that of the Commerce Clause. *Allied-Bruce Terminix,* 513 U.S. at 274, 115 S. Ct. at 840. *See, e.g., Perry v. Thomas,* 482 U.S. 483, 490, 107 S. Ct. 2520, 2526, 96 L. Ed. 2d 426 (1987). Therefore, when a dispute falls within the scope of the FAA, a contract that includes an arbitration clause is governed by federal law. *Allied-Bruce Terminix,* 513 U.S. at 281, 115 S. Ct. at 843; *see* 9 U.S.C. § 3 (1947).

*Vold v. Broin & Assocs., Inc.*, 2005 S.D. 80, ¶ 16, 699 N.W.2d 482, 487. In *Vold*, the contract and construction dispute involved residents from South Dakota and Minnesota, thereby implicating interstate commerce. Accordingly, we reviewed the matter under controlling federal law. *Id.*

[¶19.]       Despite its arguments, DT-Trak concedes that the two grounds raised in support of its motion to vacate the award – "evident partiality" and "exceeding authority" – are in both the FAA and SDAA. DT-Trak states: "Given the similar language of the 'evident partiality' and 'exceeding authority' standards in each set of statutes, and the absence of binding state-law precedent, DT-Trak[] believes this Court will look to federal interpretations of that language for guidance."

[¶20.]       This Court does not need to decide which law controls. There are some differences in the statutory language of the FAA and SDAA. However, in this case the result is the same whether the merits of the two reasons for vacation of the arbitration award are analyzed under state or federal law. For purposes of this

case, therefore, we do not need to conduct further analysis of which law is controlling.

[¶21.]    **2.    Whether the circuit court erred in determining there was not "evident partiality" in the arbitration panel.**

[¶22.]    DT-Trak claims evident partiality by its member of the arbitration panel. "[T]he well accepted rule in arbitration cases is that a party who fails to raise a claim of partiality against an arbitrator prior to or during the arbitration proceeding is deemed to have waived the right to challenge the decision based on 'evident partiality.'" *Daiichi Hawaii Real Estate Corp. v. Lichter*, 82 P.3d 411, 431-32 (Haw. 2003). According to the record, DT-Trak did not raise a claim of arbitrator partiality before or during arbitration, even though Prue alleges that DT-Trak's counsel had the phone records at least seven months before the arbitration hearing. Because it is difficult to tell from the record whether DT-Trak could have alleged partiality sooner, we will assume that the issue is not waived.

[¶23.]    SDCL 21-25A-24(2) provides: "Upon application of a party, the court shall vacate an award where . . . [t]here was evident partiality by an arbitrator *appointed as a neutral* or corruption in any of the arbitrators or misconduct prejudicing the rights of any party . . ." (Emphasis added.) DT-Trak relies on 9 U.S.C. § 10(a)(2), which provides that a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators . . . ."[2] The

---

2.    In full, 9 U.S.C. § 10(a)(2) provides: "In any of the following cases *the United States court in and for the district wherein the award was made* may make an order vacating the award upon the application of any party to the arbitration . . . where there was evident partiality or corruption in the arbitrators, or

(continued . . .)

language of the statues is similar, but the FAA does not describe an arbitrator "appointed as a neutral." In this case, there is no indication that all the arbitrators were to be anything other than neutral. Arbitrators must be presumed neutral unless otherwise indicated. We therefore analyze whether there was evident partiality without needing to distinguish between federal and state law.

[¶24.] DT-Trak asserts that the award must be vacated because a member of Morgan & Theeler had previously talked with Price, creating an impression of possible bias against DT-Trak.[3] DT-Trak argues that the standard for determining evident partiality is found in *Commonwealth Coatings Corp v. Continental Casualty Co.*, 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968). In *Commonwealth Coatings*, the third arbitrator, who was picked by the two arbitrators selected by the parties, failed to inform the petitioner that he was sporadically employed by the other party. *Id.* at 146, 89 S. Ct. at 338. The petitioner conceded "that the third

_____

(. . . continued)

either of them . . . ." Although the statute appears to indicate that only a federal court would have jurisdiction to vacate an award, several courts have found the language does not confer federal subject matter jurisdiction. *See Ford v. Hamilton Invs., Inc.*, 29 F. 3d 255, 257 (6th Cir. 1994); *Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 882, 883 (9th Cir. 1993); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990) (relying on *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32, 74 L. Ed. 2d 765 (1983) ("The Arbitration Act is something of an anomaly in the field of federal court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction.")). We conclude our state court system has jurisdiction to examine the award.

3. There is no allegation that the other arbitrators were biased.

arbitrator was innocent of any actual partiality, or bias, or improper motive." *Id.* at 152, 89 S. Ct. at 341 (Fortas, J. dissent). The majority opinion in *Commonwealth Coatings* was written by Justice Black, who wrote that the Court "can perceive no way in which the effectiveness of the arbitration process will by hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Id.* at 149, 89 S. Ct. at 339. Justice Black was joined by three other Justices. Justice White wrote a concurring opinion joined by Justice Marshall. Justice White wrote that arbitrators should "not [be] automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." *Id.* at 150, 89 S. Ct. at 340 (White, J., concurring). From this language, DT-Trak asserts that the *Commonwealth Coatings* standard is that there is evident partiality warranting vacatur when an arbitrator fails to disclose facts showing a potential conflict of interest, even if there is no actual bias.

[¶25.] However, *Commonwealth Coatings* has provided "little guidance because of the inability of a majority of Justices to agree on anything but the result," leading some courts to treat Justice White's opinion as "a surer guide to the view of a majority of the Supreme Court than Justice Black's." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681-82 (7th Cir. 1983). Generally, courts examining *Commonwealth Coatings* have "held that 'evident partiality' is present when undisclosed facts show 'a reasonable impression of partiality.'" *Schmitz v. Zilveti,* 20 F.2d 1043, 1046 (9th Cir. 1994) (quoting *Middlesex Mut. Ins. Co. v.*

*Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982)); *see also Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283 (5th Cir. 2007) ("The 'reasonable impression of bias' standard is thus interpreted practically rather than with utmost rigor."). In order to be able to disclose facts, arbitrators must investigate for possible conflicts. *Id.* at 1048-49; *see also Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, 492 F.3d 132, 138 (2d Cir. 2007).

[¶26.] There is no support for a claim that the Morgan & Theeler law firm failed to investigate for possible conflicts.[4] There is nothing indicating that Morgan & Theeler knew the arbitration could have a possible connection to Price, who was only a witness in the arbitration, not a party. Even when Morgan & Theeler knew Price would be a witness, there is nothing to show that Morgan & Theeler could have discovered Price had called the office, even with diligent investigation. Searching all of a firm's phone records for a single call which, in some cases may or may not exist, falls into the "utmost rigor" classification. The arbitrator from Morgan & Theeler may not have had anything to disclose.

[¶27.] "Evident partiality exists where the non-disclosure at issue '*objectively* demonstrates such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives.'" *Williams v. Nat'l Football League*, 582

---

4. DT-Trak goes so far as to assert that a "proper conflicts procedure here should have warned Peterson that litigation regarding DT-Trak had been discussed with one of his partners prior to his being approached to be an arbitrator for related litigation." This allegation is unsupported. DT-Trak failed to include anything in the record to substantiate an argument that Morgan & Theeler lacks a "proper conflicts procedure." Furthermore, from the facts that are established by the record, it appears there was no conflict to discover.

F.3d 863, 885 (8th Cir. 2009) (quoting *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 750 (8th Cir. 2003)). DT-Trak did not produce facts to substantiate its allegation of evident partiality. Prue's counsel attempted to learn more about Price's contact with the firm; counsel verified that an affidavit from a member of the firm could have been obtained with DT-Trak's consent. Instead, DT-Trak relies on Price's claim of attorney-client privilege in separate litigation and one short phone call with Bottum months earlier. Furthermore, Price was not a party in the arbitration – only a witness. DT-Trak has not shown how or why Morgan & Theeler would benefit from a favorable award for Prue, i.e., that "a reasonable person could assume that the arbitrator had improper motives." *See id.* Instead, DT-Trak wants this Court to find "a reasonable impression of partiality" from one short phone call, for which we have no context. This we will not do. Theeler was DT-Trak's chosen arbitrator, and DT-Trak has ultimate responsibility for its choice. DT-Trak has not shown that Theeler was partial, let alone that DT-Trak was prejudicially tainted.

[¶28.] In *Commonwealth Coatings*, the Supreme Court interpreted the statute allowing vacatur for evident partiality as "a desire of Congress to provide not merely for any arbitration but for an impartial one." 393 U.S. at 147, 89 S. Ct. at 338. DT-Trak makes many assertions, but fails to show how the unanimous decision for Prue was the result of partial or biased arbitration. "[N]ot all dealings rise to the level of creating the impression—or reality—of possible bias so as to warrant vacating an arbitration award based on 'evident partiality.'" *Daiichi*

*Hawaii Real Estate Corp.*, 82 P.3d at 427. Because the phone call here is not evident and also does not rise to the level of partiality, we affirm on this issue.[5]

[¶29.] **3. Whether the circuit court erred in concluding that the arbitration panel provided findings of fact and conclusions of law sufficient to support its decision.**

[¶30.] SDCL 21-25A-24(3) provides: "Upon application of a party, the court shall vacate an award where . . . [t]he arbitrators exceeded their powers . . . ." The FAA provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(4). The language of the FAA and SDAA is similar, though again, not identical. The difference does not affect the ultimate resolution of this issue on the merits.

---

5. DT-Trak argues that the circuit court erred in analyzing whether there was an attorney-client relationship to determine evident partiality. There is a significant amount of discussion in the appellate briefs regarding whether Price had an attorney-client relationship with the Morgan & Theeler law firm. This is not the standard for evident partiality, as seen by the previous analysis. Therefore, we do not need to address whether such a relationship existed. Certainly an attorney-client relationship with a party or witness to the arbitration, if true, would need to be disclosed. Whether such a relationship existed would be subsumed into dealings creating a reasonable impression of partiality. Because we have already concluded that Price's contact with Morgan & Theeler did not rise to the level of partiality requiring vacation of the award, we do not need to examine this issue further.

[¶31.]     DT-Trak has a high burden on this issue:

> In examining a circuit court's order vacating an arbitration award, we review the court's findings of fact under the clearly erroneous standard, but decide questions of law de novo. *Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), Local 7-0159*, 309 F.3d 1075, 1080 (8th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947-48, 115 S. Ct. 1920, 1926, 131 L. Ed. 2d 985 (1995)). "However, we must accord 'an extraordinary level of deference' to the underlying award itself." *Id.* (quoting *Keebler Co. v. Milk Drivers & Dairy Emps. Union, Local No. 471*, 80 F.3d 284, 287 (8th Cir. 1996)). "Indeed, we must confirm the award even if we are convinced that the arbitrator committed serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Id.* (extracting from *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir. 2002)); s*ee also Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 748-49 (8th Cir. 1986).

*Vold*, 2005 S.D. 80, ¶ 10, 699 N.W.2d at 485-86. If we are convinced the arbitrators were arguably construing or applying the contract and acting within the scope of their authority, we must confirm this award.

[¶32.]     DT-Trak alleges that the arbitration panel exceeded its powers by failing to issue findings of facts and conclusions of law as required by the Agreement. We have previously addressed how we review whether arbitrators acted within the scope of their authority, or exceeded their powers:

> Whether an arbitrator acted within the scope of his authority, or, conversely, exceeded his powers, is a question of law, reviewed de novo, the resolution of which depends on the intention of the parties. The intention of the parties is determined by reference to the agreement or submission. 6 C.J.S. *Arbitration* § 69 (1975); *Azcon Constr. Co., Inc., v. Golden Hills Resort, Inc.,* 498 N.W.2d 630 (S.D. 1993); *Peska Constr. Co., Inc. v. Portz Inv.,* 2003 S.D. 136, 672 N.W.2d 483. In deciding whether an arbitrator has exceeded his power, the court need only examine the submission and the award to determine whether the award conforms to the submission. *Bic*

> *Pen Corp. v. Local No. 134,* 183 Conn. 579, 440 A.2d 774, 776 (1981).

*Double Diamond Const. v. Farmers Co-op. Elevator Ass'n of Beresford*, 2004 S.D. 65, ¶ 10, 680 N.W.2d 658, 660-61. In this case, the Agreement required the arbitration panel to "render an award in writing within 30 days of the completion of the hearing, which must contain findings of facts and conclusions of law."

[¶33.]     DT-Trak argues that the arbitration panel failed to make findings of fact on any disputed issue—the findings of fact submitted were "in name only." DT-Trak asserts that the findings made were not material or not in serious dispute. Because the findings were not sufficient, the panel exceeded its authority when by failing to issue a reasoned decision. Prue counters that the panel did exactly what the Agreement required.

[¶34.]     After reviewing the findings of fact and conclusions of law, we conclude they conform to the Agreement's requirement to render an award in writing, containing findings and conclusions.[6] We agree with the circuit court that the findings are sufficient to support the legal conclusions, and consequently, the award. Because the panel was "arguably construing or applying the contract and acting within the scope of [its] authority," we confirm the award. *See Vold*, 2005 S.D. 80, ¶ 10, 699 N.W.2d at 486.

[¶35.]     DT-Trak does not allege that the findings that were made are clearly erroneous, only that they are insufficient or not material. However, the panel

---

6.     The panel issued a 13-page document containing 44 findings and 19 conclusions. We agree with DT-Trak, however, that the length of the findings issued is not a standard we use for review.

found: "There was no evidence presented that Prue made statements to a third party that he was involved with P&H Medical services *or otherwise violated Prue's restrictive covenants.*" (Emphasis added.) This was a material issue to arbitration. While the findings may not be as detailed as DT-Trak would require, the material findings the panel made that favor Prue have not been challenged. We do not have the record from the arbitration hearing. In the appellate record, there is nothing to indicate that any of the findings are clearly erroneous.

[¶36.]       "Findings must be entered 'with sufficient specificity to permit meaningful review.'" *March v. Thursby*, 2011 S.D. 73, ¶ 20, 806 N.W.2d 239, 244 (quoting *Goeden v. Daum*, 2003 S.D. 91, ¶ 9, 668 N.W.2d 108, 111). Based on the findings entered by the panel, DT-Trak failed to show that the panel erred in concluding that "DT-Trak has not shown by a preponderance of the evidence that Prue consulted with or was involved with Price and Hochhalter in P&H Medical Services or otherwise breached the Stock Purchase Agreement." Making "every reasonable presumption in favor of the award," DT-Trak has not shown the panel exceeded its authority. *See Spiska*, 2007 S.D. 31, ¶ 13, 730 N.W.2d at 643.

## CONCLUSION

[¶37.]       Under either the FAA or SDAA, DT-Trak has failed to show that the arbitration award should be vacated. There is no support that any member of the arbitration panel exhibited "evident partiality." Additionally, the findings of fact and conclusions of law submitted by the panel were sufficient under the requirements of the Agreement. We affirm.

[¶38.]     KONENKAMP and SEVERSON, Justices, and JENSEN and HOFFMAN, Circuit Court Judges, concur.

[¶39.]     JENSEN, Circuit Court Judge, sitting for ZINTER, Justice, disqualified; and, HOFFMAN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.