#26469-aff in pt, rev in pt & rem-SLZ

**2013 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

AGFIRST FARMERS COOPERATIVE,   Plaintiff and Appellee,

  v.

DIAMOND C DAIRY, LLC,     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE VINCENT A. FOLEY
Judge

* * * *

LEE SCHOENBECK
Watertown, South Dakota     Attorney for plaintiff
            and appellee.


RICHARD L. RUSSMAN of
Richardson, Wyly, Wise,
 Sauck & Hieb, LLP
Aberdeen, South Dakota     Attorneys for defendant
            and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2013

OPINION FILED **02/20/13**

#26469

ZINTER, Justice

[¶1.]    AgFirst Farmers Cooperative (AgFirst) sued Diamond C Dairy, LLC (Diamond C) for cattle feed allegedly purchased by Diamond C.  Although admitting it owed AgFirst for some of the feed, Diamond C contended that some shipments could have been sent to a facility in Ft. Dodge, Iowa that was owned by another company (the "Ft. Dodge defense").  In pretrial proceedings, the court disallowed this defense by refusing to allow Diamond C to withdraw its admissions admitting that the feed had been delivered to its facility.  Diamond C also contended it did not owe AgFirst for some shipments because Diamond C's facility did not have sufficient storage capacity to accommodate those loads of feed (the "scheduling defense").  After considering the evidence at a bench trial, the circuit court rejected this second defense on the merits and awarded AgFirst a money judgment. Diamond C appeals both rulings.  We affirm in part, reverse in part, and remand.

*Facts and Procedural History*

[¶2.]    Diamond C is a corporation that operates a dairy near Orient.  From January to September 2010, Diamond C purchased soybean meal, feed corn, and "dairy mix" from AgFirst on an open account.  The dairy mix was specially prepared for Diamond C by Dakotaland Feeds, LLC, a company in Huron.

[¶3.]    Larry Jensen, of Jensen Trucking, delivered the feed to Diamond C's facility.  Jensen would usually obtain a load of feed corn in Brookings or soybean meal in Volga and deliver it to Diamond C's dairy.  Jensen would then drive to Huron and return with a load of dairy mix from Dakotaland Feeds.

[¶4.] In January 2011, AgFirst sued Diamond C for payment of fifty-seven loads of feed. AgFirst acknowledged that Diamond C paid for some of the deliveries, but AgFirst contended that Diamond C owed $89,581.79 on its account.

[¶5.] In its response to requests for admissions, Diamond C admitted receipt of and lack of payment for numerous loads. Two days before trial, however, counsel for Diamond C notified AgFirst's counsel that Diamond C would be requesting the court's permission to withdraw the admissions relating to some of the loads of dairy mix.

[¶6.] A court trial began on December 29, 2011. On the morning of the first day of trial, the court granted Diamond C's request to withdraw some of its admissions. This ruling permitted Diamond C to present its scheduling defense. Diamond C contended it could not have received certain loads of dairy mix because its facility did not have sufficient storage capacity to receive those loads on the schedule that AgFirst claimed it had followed. The court did not allow Diamond C to withdraw its admissions relating to its Ft. Dodge defense. That defense was premised on the fact that some of the shipping reports indicated that a company in Ft. Dodge, Iowa was involved in some of the transactions.

[¶7.] The withdrawal of the admissions relating to the scheduling defense prompted a pretrial discussion whether one of Diamond C's witnesses would be required to personally appear to testify. Prior to trial, the court and counsel had agreed that Ty Hill, Diamond C's manager, could testify telephonically. However, because Hill's credibility would be in issue under the new scheduling defense, the

court required Hill to appear personally. Because Hill resided in Georgia, a second day of trial was scheduled for January 10, 2012.

[¶8.] AgFirst presented its case in chief on December 29. Jarvis Haugeberg, the manager of Dakotaland Feeds, testified regarding the production of the specially-made dairy mix and its preparation for delivery to Diamond C. Larry Jensen testified regarding the delivery of the feed to Diamond C's facility. Terry Knudson, AgFirst's general manager, described AgFirst's general billing practices and its billing of Diamond C's account.

[¶9.] The second day of trial took place on January 10, 2012. On that day, the parties presented conflicting evidence whether Diamond C's facility had sufficient storage capacity to permit delivery of the dairy mix on the schedule that AgFirst asserted. Hill testified that Diamond C's facility lacked sufficient capacity. Hill described the facility, which included three storage bays that would each hold one conical pile of feed. Hill indicated that the maximum height of each pile was fifteen feet with a thirty degree angle of repose. After performing mathematical calculations, Hill concluded that the facility only had the storage capacity for 35,000 pounds (approximately one load) of dairy mix every two weeks. Hill explained that although the facility could have held a total of three loads of feed, they would have needed to be three different types of feed. Hill ultimately opined that Diamond C could not have received all of the loads of dairy mix at the times AgFirst claimed they were delivered.

[¶10.] Terry Hudson, AgFirst's manager, offered a contrary opinion. Hudson testified that based on the density of the feed and the area for storage, Diamond C's

facility could have held up to three loads of dairy mix. Hudson opined that there was sufficient storage space for the dairy mix to have been delivered on the schedule reflected in AgFirst's billing records.

[¶11.] The court, in ruling for AgFirst, found that "there was sufficient storage space to allow more than one load of . . . dairy mix to be stored at a time in the Diamond C facility." The court found that Diamond C had ordered and received each of the disputed loads. The court awarded AgFirst $84,863.26 plus interest. The court also awarded AgFirst's "legal fees and expenses associated with the second day of trial in the amount of $1,970.72."

[¶12.] Diamond C appeals, raising the following issues:

> Whether the findings of fact, which disclosed that the court had "independently" calculated storage capacity, were adequate to support the determination that Diamond C received the dairy mix.

> Whether the court erred in awarding AgFirst attorney's fees and expenses associated with the second day of trial.

> Whether the court erred in denying Diamond C's request to withdraw admissions relating to the Ft. Dodge defense.

*Decision*

*Adequate Findings*

[¶13.] Diamond C argues that the circuit court failed to make adequate findings to support its determination that there was sufficient storage space at Diamond C's facility for Diamon C to accept AgFirst's claimed deliveries. Our "standard of review requires that we . . . determine whether the findings of fact are clearly erroneous." *Goeden v. Daum*, 2003 S.D. 91, ¶ 7, 668 N.W.2d 108, 110. "Without findings of fact, there is no way to determine the basis for the [circuit]

court's conclusions . . . or whether [any] findings were clearly erroneous." *Id.* Therefore, "[i]t is well-settled law that it is the [circuit] court's duty to make required findings of fact, and the failure to do so constitutes reversible error" because "[w]e cannot meaningfully review the [circuit court's] decision without the [ ] court's reasons for ruling the way it did." *Id.* ¶¶ 6-7. "Findings must be entered 'with sufficient specificity to permit meaningful review.'" *DT-Trak Consulting, Inc. v. Prue*, 2012 S.D. 39, ¶ 36, 814 N.W.2d 804, 814 (quoting *March v. Thursby*, 2011 S.D. 73, ¶ 20, 806 N.W.2d 239, 244).

[¶14.]     Diamond C argues the court erred because its findings reflect that the court "independently" calculated the available storage space without disclosing the math it used to make its calculation. The court's written findings confirm that "[t]he [c]ourt independently, based upon the facts presented, calculated the available storage space." Diamond C contends that because the court failed "to provide the parties with [the court's] calculations or admit them as an exhibit for review[,]" the findings are insufficient "to allow for meaningful review[.]" We disagree.

[¶15.]     Diamond C overlooks the entirety of the record. After the court's written finding indicating that it had "independently" calculated the available storage space, the court specifically incorporated its oral findings announced at the trial. Considering those oral findings together with the evidence presented, the court's findings are specific and enable meaningful review.

[¶16.]     As previously noted, Diamond C's Ty Hill testified regarding the mathematical calculations he used to determine the facility's available storage. Hill

testified that the capacity of the storage bays could be determined by the height, radius, and angle of repose of a pile of feed. After giving his opinion, the court asked Hill questions regarding his calculations. Hill stated that the conical piles had a 12.5-foot radius, but he also acknowledged that there was free space in the storage bay, and therefore, Diamond C "would also have the ability to have that cone extended 15-foot" with a thirty degree angle of repose.

[¶17.] In its oral findings at the conclusion of the trial, the court adopted Hill's mathematical calculation, but the court arrived at a different conclusion based on the extended cone measurements Hill acknowledged. The court found:

> Even shrinking the bays down, if you have a 10-foot radius, [rather than a 12.5-foot radius], you end up with 5.77 height of a cone and if you take that cone and you have 20-foot and extend it out in the direction of the length, you end up with then a – I can't remember the name of the shape, but the triangle with width. Even using those smaller dimensions, and using corn with the 30 percent repose, using corn to your argument's advantage because it is lighter, you would still end up with the possibility of approximately 65,000 pounds available in those bays.

[¶18.] Diamond C has not alleged that these oral findings are clearly erroneous. Considering these findings together with Hill's testimony, we are able to review a challenge to the court's determination. The record reflects that the court adopted Hill's mathematical calculation but reached a different conclusion using Hill's own testimony that the cone could be "extended" fifteen feet. We therefore conclude that even though the court stated that it had "independently . . . calculated the available storage space," its findings are based on record evidence, the findings are sufficient to permit meaningful review, and Diamond C has not demonstrated clear error.

*Costs and Attorney's Fees*

[¶19.]     Diamond C argues the court erred in awarding AgFirst $1,970.72 for attorney's fees and expenses incurred for the second day of trial. "[A]n award of attorney['s] fees is allowed when authorized . . . by statute." *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 25, 800 N.W.2d 730, 737. *See* SDCL 15-17-38 (providing that attorney's fees may be awarded when authorized by the parties' contract or by statute). "The party requesting an award of attorney['s] fees has the burden to show its basis by a preponderance of the evidence."[1] *Arrowhead Ridge I, LLC*, 2011 S.D. 38, ¶ 25, 800 N.W.2d at 737.

[¶20.]     Here, the court awarded terms because Diamond C withdrew admissions, causing a continuance. The court explained:

> At the trial, Ty Hill attempted to testify by telephone on behalf of Diamond C. The court was advised the morning of trial that Diamond C intended to put the veracity of witnesses at issue, and therefore, the [c]ourt could not allow Ty Hill to testify [by telephone] at trial, and another day of trial was necessitated by the new defenses Diamond C first asserted on the morning of the first day of trial.

[¶21.]     Although the court did not indicate the statutory basis for its award, expenses and fees are awardable under SDCL 15-11-10 for the granting of a

---

1.     AgFirst argues that the award of $1,970.72 was assessed "pursuant to the [c]ourt addressing the sufficiency of responses to requests for admissions." AgFirst points out that on October 31, 2011, it requested attorney's fees based on Diamond C's alleged insufficient responses to requests for admissions, as authorized by SDCL 15-6-36(a) and SDCL 15-6-37(a)(4). The court, however, addressed the discovery sanctions motion separately from the expenses incurred on the second day of trial. The court awarded AgFirst attorney's fees of $1,270 for discovery sanctions.

continuance.[2] Nevertheless, we have not been directed to any record evidence of an itemized request for attorney's fees and expenses incurred on the second day of trial.[3] "Without an itemized statement of services rendered in the litigation, the trial court lacks sufficient information from which to conclude that an award of attorney fees is reasonable." *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 34, 707 N.W.2d 85, 100. We also have not been directed to any record evidence showing that the fees and expenses awarded were necessitated by the continuance. *See Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶¶ 28-29, 605 N.W.2d 173, 180-81 (affirming a $410 award of terms based on the party's affidavit that $410 was the cost of the mileage and attorney's fees incurred because of the trial's continuance); *Oleson v. Snyder*, 277 N.W.2d 729, 733 (S.D. 1979) (affirming a $1,000 award of terms when, after weighing the inconvenience and actual expenses resulting from the continuance, the Court determined it was a reasonable award). *See also State v. Ralph Williams' Nw. Chrysler Plymouth, Inc.*, 553 P.2d 423, 428-29 (Wash. 1976) (affirming a $13,638.79 award of terms after concluding the award was reasonable based on the party's affidavits of the actual cost of the delay, which "included overhead, mailing charges, transportation costs, and lodging for witnesses").

---

2. SDCL 15-11-10 provides that continuances may be granted "upon such terms as the court may impose." *See also Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶¶ 24-29, 605 N.W.2d 173, 180-81.

3. An itemization of attorney's fees was provided to the court prior to its award of $1,270 for the discovery sanctions. However, this itemization only included pretrial attorney's fees (through December 28, 2011). Therefore, this itemization could not have been the basis for the court's award of $1,970.72 for attorney's fees incurred on January 10, 2012.

Finally, the court entered no findings and conclusions justifying the attorney's fees and expenses associated with the trial's continuance. "This Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees" because "[w]ithout findings of facts and conclusions of law[,] there is nothing to review." *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 30, 687 N.W.2d 507, 514.

[¶22.] Because the record is inadequate in these three areas, we are unable to determine whether the attorney's fees and expenses were appropriate. We remand this issue for the submission of an itemized request, a showing of necessity, and the entry of findings of fact and conclusions of law justifying the award.

*Withdrawal of Admissions*

[¶23.] Diamond C argues that the court erred in denying its request to withdraw its admissions relating to the Ft. Dodge defense. A circuit court's decision on a motion to withdraw or amend responses to requests for admissions is reviewed under the abuse of discretion standard. *Tank v. Munstedt*, 504 N.W.2d 866, 868 (S.D. 1993). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Johnson v. Miller*, 2012 S.D. 61, ¶ 7, 818 N.W.2d 804, 806. An error of law constitutes an abuse of discretion. *Stahl v. Pollman*, 2006 S.D. 51, ¶ 9, 716 N.W.2d 794, 796.

[¶24.] A party may request permission from the court to amend or withdraw its responses to requests for admissions. SDCL 15-6-36(b) (providing that "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to

satisfy the court that withdrawal or amendment will prejudice that party in maintaining his action or defense on the merits"). Allowing withdrawals or amendments to admissions "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed. R. Civ. P. 36(b), advisory committee's note, 1970 Amendment, subdivision (b) (describing the purpose of the federal counterpart to South Dakota's rule). In determining whether to allow amendment or withdrawal of a party's admission, a two-part test is utilized: (1) whether the presentation of the merits is subserved by allowing the withdrawal or amendment, and (2) whether the adverse party is prejudiced in the presentation of their case. *Tank*, 504 N.W.2d at 868. *See also Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313-14 (8th Cir. 1983).

[¶25.]     Here, the court denied Diamond C's request to withdraw the admissions relating to Diamond C's Ft. Dodge defense without considering the required two-part test. We acknowledge that Diamond C possessed the shipping reports with the Ft. Dodge, Iowa address before it admitted receipt of those deliveries. But the court allowed a late withdrawal of the other admissions relating to the scheduling defense. More importantly, in denying the request to withdraw the Ft. Dodge admissions, the court reasoned only that Diamond C had no other affirmative proof to support the Ft. Dodge defense. The possession of other affirmative proof to support a defense is not the correct test to determine a motion to withdraw admissions. The court abused its discretion in applying the incorrect test.

[¶26.] An application of the two-part test suggests that Diamond C should have been permitted to withdraw its admissions relating to this defense. First, the presentation of the merits would be furthered by allowing the withdrawal. Diamond C possessed plant shipping reports suggesting that the feed at issue may have been related to a company other than Diamond C or AgFirst. But those facts could only be considered if withdrawal of the relevant admissions was allowed. The court's denial of Diamond C's request to withdraw admissions, precluding a defense supported by the manufacturer's shipping reports, does not further the purpose of allowing presentation of the case on its merits. Granting Diamond C's motion to withdraw the admissions would have "aided in the ascertainment of the truth and the development of the merits." *See Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1266 (11th Cir. 2002) (internal quotation marks omitted).

[¶27.] Additionally, AgFirst failed to show the type of prejudice necessary to prevent the withdrawal of admissions. "The prejudice contemplated by the Rule is . . . the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Tank*, 504 N.W.2d at 869. On the other hand, the "cost, time, and delay" associated with going to trial and developing evidence on the issues that were admitted is not "the kind of prejudice contemplated by [the rule.]" *Id. See also Marshall v. D.C.*, 391 A.2d 1374, 1379 (D.C. 1978) (internal citation omitted) ("The rule . . . focuses on the lack of prejudice to the opposing party and on the policy for furthering just and complete resolution of the merits. Accordingly, unless a party demonstrates prejudice by

-11-

reliance upon previous admissions, the [circuit] court can and should extend permission to withdraw or amend.").

[¶28.] In resisting Diamond C's request to withdraw its admissions, AgFirst only claimed the kind of prejudice that is not contemplated under the rule. AgFirst argued that it would be prejudiced because Diamond C had the shipping reports with the Ft. Dodge address before the admissions were made. However, AgFirst did not argue that if the withdrawals were allowed, there would be a need to obtain new evidence or that it would experience difficulty in proving its case. On the contrary, AgFirst had substantial time to prepare for the Ft. Dodge defense because of the two-week continuance granted to accommodate the testimony of Ty Hill. Moreover, AgFirst did not assert that, to dispute the Ft. Dodge defense, new but unavailable witnesses would be necessary. Larry Jensen, who was in charge of delivering the loads, was available and testified. The record also reflects that Jarvis Haugeberg of Dakotaland Feeds appeared to have been prepared to refute the Ft. Dodge defense on the first day of trial.[4] This record does not suggest the kind of prejudice required to deny a motion to withdraw. *See Gutting*, 710 F.2d at 1313-14 (reversing a circuit court's denial of a motion to withdraw admissions because the court failed to apply

---

4. During Haugeberg's testimony in AgFirst's case in chief, AgFirst's counsel stated:

> Jarvis, I was going to have you explain your billing office in Ft. Dodge, Iowa, and I want you to understand the Judge has ruled that that is not going to be an issue in this case, so you don't have to tell us about the Land O'Lakes billing office in Ft. Dodge, Iowa.

the two-part test and did not find that the moving party would be prejudiced by allowing the withdrawal).

[¶29.]     The record in this case reflects that the circuit court applied the wrong test in determining the motion to withdraw admissions.  Considering the entirety of the record, not allowing the Ft. Dodge defense would subvert the ascertainment of the truth in the presentation of the merits.  Further, AgFirst failed to meet its burden of establishing that it would suffer the kind of prejudice contemplated by SDCL 15-6-36(b).  We reverse the circuit court's ruling disallowing the withdrawal of the admissions related to Diamond C's Ft. Dodge defense, vacate that portion of the judgment, and remand for a new trial on that issue.

[¶30.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.